J-S19007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

TITO REYES

          Appellant

:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1789 EDA 2019

Appeal from the PCRA Order Entered May 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0204931-2005

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                              **FILED JULY 08, 2020**

Tito Reyes appeals *pro se* from the order that dismissed as untimely his third petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

This Court summarized the facts underlying Appellant's conviction as follows:

> On March 13, 1997, Gloria Ramos ("Gloria") was outside on the porch of her mother's home in Philadelphia.  Her two brothers, Appellant and Luis Ramos ("Luis"), accompanied by their brother-in-law, "Shorty," approached Gloria.  The men asked if she would come with them to knock on the door of a house where Madelassi Nunez lived.  Apparently, Ms. Nunez was having an affair with the boyfriend of Johanna, who was the sister of Appellant, Luis, and Gloria.[1]
>
> _____
>
> [1] Ms. Nunez was not a stranger to Gloria.  Prior to the events that are the subject of this criminal case, Gloria, Johanna, and their sister Mimi, accosted Ms. Nunez at the restaurant where Ms. Nunez worked.

Appellant, Luis, Gloria, and Shorty drove to Ms. Nunez'[s] house, and Gloria knocked on the door. When Ms. Nunez answered the door, the three men, who were now wearing gloves and masks, forced their way past Ms. Nunez into the vestibule of the building. Ms. Nunez retreated into her apartment. The men knocked on Ms. Nunez'[s] apartment door, but she refused to open it. Undaunted, they broke the door down and entered forcibly. The intruders demanded drugs and money. A woman named Rosario Figueroa, who lived in the apartment with Ms. Nunez, was present during this home invasion. The men demanded that Ms. Figueroa empty her pockets, and they took $40.00 from her. Gloria told Ms. Nunez to give the men money and drugs, but Ms. Nunez told them that she had no money or drugs. Gloria then struck Ms. Nunez repeatedly in the head with a crowbar and knocked her to the floor. While Ms. Nunez was on the floor, Gloria told Appellant to shoot Ms. Nunez. Appellant proceeded to stand over Ms. Nunez, and he then fired a shot into her chest. Ms. Nunez died as a result of her injuries.

Over seven years later, Appellant, who was a fugitive, was arrested in Camden, New Jersey. He was returned to Philadelphia and charged with multiple crimes in connection with the killing of Ms. Nunez, and both he and his brother Luis, were scheduled to be tried jointly. Additionally, prior to the trial, Gloria entered into a plea bargain with the Commonwealth and agreed to testify against Appellant and Luis.

*Commonwealth v. Reyes*, 938 A.2d 1119 (Pa.Super. 2007) (unpublished memorandum at 1-3).

The PCRA court offered the ensuing procedural history of the case:

On October 24, 2005, following a jury trial before this court, [Appellant] was convicted of murder of the first degree, two counts of robbery, burglary, criminal conspiracy, carrying a firearm without a license, and possessing instruments of crime (PIC). On December 9, 2005, [Appellant] was sentenced to the mandatory term of life imprisonment. On September 6, 2007, [the] Superior Court affirmed [Appellant's] judgment of sentence and, on March 6, 2008, our Supreme Court denied [his] petition for allowance of appeal.

- 2 -

On March 25, 2008, [Appellant] filed a PCRA petition *pro se*. Counsel was appointed and, on December 5, 2008, filed an amended petition. On March 31, 2009, the Commonwealth filed a motion to dismiss. After reviewing the pleadings, on May 5, 2009, this court sent [Appellant] notice of its intent to deny and dismiss his petition without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice). Consistent with its 907 Notice, on June 12, 2009, this court denied and dismissed [Appellant's] PCRA petition. On June 22, 2010, [the] Superior Court affirmed this court's denial of [the] petition. Our Supreme Court denied *allocatur* on October 19, 2010.

[Appellant's] second PCRA petition was untimely, having been filed almost four years after [his] judgment of sentence became final. On August 15, 2014, this court sent [Appellant] a 907 Notice. Having received no response from petitioner, this court dismissed [his] second PCRA petition as untimely on October 31, 2015. [Appellant] did not appeal this dismissal.

[Appellant] filed his third PCRA petition, untimely, on October 30, 2018[, stating an after-discovered-evidence claim]. On March 1, 2019, the Commonwealth responded to [the] petition. On April 8, 2019, this court received from [Appellant] a motion to amend his PCRA petition, raising the additional issue of ineffective assistance of counsel for failure to communicate his plea agreement. Having reviewed the pleadings, this court has determined that [Appellant's] claim fail[ed] to satisfy any of the exceptions to the timeliness requirements and, therefore, this court lack[ed] jurisdiction over [the] petition.

Pa.R.Crim.P. 907 Notice, 4/23/19, at 1-3 (footnotes and unnecessary capitalization omitted).

The PCRA court accordingly dismissed the petition without a hearing after issuing the appropriate notice of its intent to do so. Appellant timely filed a notice of appeal and complied with the PCRA court's order to file a concise statement of errors complained of on appeal. Appellant presents the following question for this Court's determination:

[Whether the] PCRA court erred in dismissing [Appellant's] third PCRA [petition] as untimely where Appellant submitted [it] within (1) one year from [the] day [the newly-]discovered fact was discovered by Appellant that Commonwealth witness Gloria Ramos was institutionalized in mental hospital prior to testifying and that Gloria Ramos was "coerced" into testifying by investigators against Appellant?

Appellant's brief at 1 (unnecessary capitalization omitted).

We begin with the applicable legal principles. "Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Johnson*, 179 A.3d 1153, 1156 (Pa.Super. 2018) (internal quotation marks omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Miner*, 44 A.3d 684, 688 (Pa.Super. 2012).

The first hurdle for a PCRA petitioner is establishing the timeliness of the petition. For a petition to be timely under the PCRA, it must be filed within one year of the date that the petitioner's judgment of sentence became final. 42 Pa.C.S. § 9545(b)(1). Appellant's petition, filed a decade after his judgment of sentence became final, is patently untimely. Thus, unless Appellant pled and proved one of the three exceptions to the PCRA time-bar outlined in 42 Pa.C.S. § 9545(b)(1), we cannot address the claims he asserts therein. *See Commonwealth v. Pew*, 189 A.3d 486, 488 (Pa.Super. 2018) ("If the petition is untimely and the petitioner has not pled and proven an exception, the petition must be dismissed without a hearing because

Pennsylvania courts are without jurisdiction to consider the merits of the petition.").

Appellant acknowledged the untimeliness of his petition, but pled that it satisfied the newly-discovered facts exception codified at 42 Pa.C.S. § 9545(b)(1)(ii). *See* PCRA Petition, 10/30/18, at 3. Specifically, Appellant alleged that until he finally obtained his trial transcripts in October 2018 after "many, many attempts" at obtaining them through the court and counsel, he did not know that Gloria Ramos, his sister, who testified for the Commonwealth and identified him at trial as one of the culprits, had previously been institutionalized for mental illness and claimed that she was coerced into assisting the prosecution.[1] *Id*. He maintains that he does not understand English, and required the assistance of an interpreter in learning the content of the transcripts. *Id*.

A petitioner relying upon the newly-discovered-fact exception must establish that: "(1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (citation omitted). While "[d]ue diligence requires neither perfect vigilance nor

---

[1] In a supplement to his PCRA petition, Appellant also claimed that he learned for the first time through the same transcript that the Commonwealth had offered a plea agreement of an open guilty plea to third-degree murder. *See* Supplemental PCRA Petition, 4/4/19, at 7. Since Appellant does not pursue that claim on appeal, we do not consider it.

punctilious care," it does require "reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Smith***, 194 A.3d 126, 134 (Pa.Super. 2018) (internal quotation marks omitted). To succeed in invoking this exception, the petitioner must "plead and prove that the information on which his claims are based could not have been obtained earlier despite the exercise of due diligence." ***Commonwealth v. Edmiston***, 65 A.3d 339, 346 (Pa. 2013).

The PCRA court determined that Appellant's claim that he did not previously know the facts upon which he relies is belied by the record. In so holding, the PCRA court focused upon the fact that the notes of testimony from October 24, 2005 show that an interpreter was present when Appellant's mother and sister offered their post-trial testimony about Gloria. ***See*** Pa.R.Crim.P. 907 Notice, 4/23/19, at 5.

Our review of the record confirms that Appellant's counsel requested an interpreter, and that she was present when Appellant's mother and sister shared information about Gloria's mental health issues and about how she was supposedly threated with removal of her daughter if she did not cooperate with the authorities. ***See*** N.T. Trial, 10/24/05, at 4, 35-36, 43. However, Appellant alleged that he was removed from the courtroom and placed in a holding cell before his mother and sister testified. ***See*** Response to 907 Notice, 5/9/19, at 3. Nothing in the transcript contradicts Appellant's

representation. As such, we cannot agree that there is no issue of fact concerning whether Appellant was present and had the assistance of an interpreter when the facts at issue were divulged on October 24, 2005.

Nonetheless, it is clear from the record that Appellant failed to plead facts that, if proven at a hearing, would show that he exercised due diligence in discovering the information recorded in the October 24, 2005 transcript. In his PCRA petition, Appellant stated that he had made diligent efforts to obtain copies of his trial transcripts from the court and his prior counsel, but did not obtain them until October 13, 2018. In support of this contention, Appellant attached letters that he sent to his trial and prior PCRA counsel in 2018 requesting the trial transcripts. *See* PCRA Petition, 10/30/18, at Exhibit A. Appellant also referenced evidence that in 2013, 2015, and 2018, he filed requests with the court for the trial transcripts.

Hence, Appellant has offered an explanation why he did not know that his mother and sister offered testimony on the record about Gloria's mental health commitments and the circumstances leading to her cooperation with the prosecution. However, we need not decide whether his sporadic efforts over the years to obtain the transcripts rise to the level of due diligence, because it is not the fact that his family came forward with this information on the record in 2005 upon which Appellant relies as his newly-discovered fact. Rather, it is the content of their testimony—Gloria's mental health history and the pressure allegedly placed upon her to cooperate—that

Appellant cites in invoking the timeliness exception. Appellant has offered no reason why he could not have earlier discovered these facts about his own sister, be it from her directly, through their shared mother and sister, or from some other source.

Accordingly, Appellant failed to overcome the PCRA's time bar by establishing that the facts upon which his claim is based could not have been ascertained earlier by the exercise of due diligence. **See Cox**, **supra** at 227. Therefore, the PCRA court properly dismissed his petition as untimely filed.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *7/8/2020*